UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.:   6:19-cv-1250-Orl-37GJK

JANE DOE,

     Plaintiff,

v.

BOARD OF TRUSTEES FLORIDA A & M

UNIVERSITY,

     Defendant.

_____/

**AMENDED COMPLAINT**

     Plaintiff, JANE DOE, by and through the undersigned counsel, hereby files this Complaint

against Defendants, BOARD OF TRUSTEES FLORIDA A & M UNIVERSITY ("FAMU") and

alleges as follows:

**INTRODUCTION**

1. Upon information and belief, Jane Doe was sexually harassed and assaulted by employee

    of FAMU, Orenn Fells. FAMU has a history of failing to properly investigate and report

    incidents of sexual harassment and assault, thus, creating an environment rife with sexual

    misconduct. Prior to Jane Doe's sexual harassment and assault, FAMU administration

    received actual notice of complaints by female FAMU students of sexual harassment by

    Orenn Fells. Despite Orenn Fells' repeated inappropriate conduct, and warnings, FAMU

    failed to engage in necessary corrective measures, instead allowing Orenn Fells to have

    unsupervised access to female law students, resulting in Jane Doe's sexual harassment and

1

assault. Furthermore, after Jane Doe disclosed the sexual assault to administration, FAMU failed to conduct an adequate Title IX investigation and reasonably accommodate or provide remedies to Jane Doe as a victim of sexual harassment and assault, including but not limited to therapy and academic adjustments, causing her to suffer damages.

## JURISDICTION, VENUE AND PARTIES

2. Plaintiff, Jane Doe sui juris and is a citizen and resident of Orange County, Florida.  Plaintiff is identified in this lawsuit by the pseudonym Jane Doe because this case involves facts of the utmost intimacy regarding Plaintiff's sexual assault, and Plaintiff fears further psychological injury if her name were publicly disclosed.

3. Defendant FAMU is a public university which is constitutionally and statutorily charged with the operation and control of post-secondary education within Orange County. FAMU is responsible for the operation and control of Florida Agricultural and Mechanical University College of Law ("FAMU College of Law").

4. Plaintiff seeks damages of not less than $5 million, which is in excess of the $15,000 jurisdictional minimum of this Court, exclusive of interest, costs, and attorneys' fees.

5. The acts and conduct giving rise to liability in this case occurred in Orange County, Florida.

## STATEMENT OF FACTS

6. At all times relevant to this lawsuit, Orenn Fells was employed as an Admissions Coordinator at FAMU College of Law.

7. On Thursday, July 20, 2017, Jane Doe received an email from FAMU College of Law declining her admission to the class of 2017.

8. Subsequently on the same day, Jane Doe received another email from FAMU College of Law stating that the prior email sent in error because of a technical glitch and that her application was still under review.

9. Jane Doe's dream was to go to law school. She excelled in undergraduate legal studies classes and felt that becoming a lawyer was her calling. She specifically chose to apply to FAMU because it was close to her family.

10. She was worried her application would be denied because the fall semester was to begin in less than two weeks. Jane Doe contacted the admissions department to inquire about her application. She spoke with Orenn Fells who stated that he would "pull some strings" for her.

11. During the call, he gave Jane Doe the impression that he would make it possible for Jane Doe to be accepted into the program even though the deadline to submit the seat deposit and finalize the admission process was less than a week away. He stated he was going to reach out to his colleagues at FAMU College of Law to help her get into the school.

12. On or about two days later, Orenn Fells stated that he spoke to his colleagues and she should expect to receive an acceptance email shortly. He made clear to her that it was because of his help that she was being admitted into FAMU College of Law.

13. On Thursday, July 27, 2017, Jane Doe received an email from FAMU accepting her admission as a full-time student to the fall 2017 semester.

14. Orenn Fells began to send Jane Doe text messages from his work cellular phone and then from his personal cellular phone. The text messages started off as friendly and professional and soon turned inappropriate. He referred to Jane Doe as "sexy chocolate" and other sexually inappropriate names.

15. During orientation, Orenn Fells text messaged Jane Doe and requested that she meet him at the library. While in the library, Orenn Fells grabbed Jane Doe's face and forcefully attempted to kiss her on the lips while grabbing her on her thighs near her buttocks attempting to pull her close to him. Jane Doe declined and attempted to retreat. After leaving the library, Orenn Fells grabbed Jane Doe's chin and tried to kiss Jane Doe again while in the elevator. She pushed him off again.

16. Orenn Fells continued pursuing Jane Doe by text messaging her, adding her on Facebook and gifting her with study cards. He often messaged Jane Doe, requesting that she meet him at his office or in an empty class room. Jane Doe declined his requests on many occasions making excuses as to why she could not meet him.

17. A week after the start of the fall semester, she conceded to meet Orenn Fells at the library. Orenn Fells started talking about school and gave Jane Doe study materials and advice for classes. Orenn Fells then attempted once again to kiss Jane Doe and she declined. He told her that she needed to grow up, stop being scared, and that she was twenty-five and in law school now.

18. Orenn Fells text messaged Jane Doe constantly, requesting to see her while she was on campus. Orenn Fells' incessant text messaging and Jane Doe's need to come up with excuses to avoid seeing him caused Jane Doe extreme anxiety during her first semester of law school.

19. Nevertheless, Jane Doe conceded to Orenn Fells' requests to visit him at his office approximately six different times. Given Orenn Fells' position in the Law School's administration, Jane Doe feared negative repercussions for her law school career if she flatly refused to see him when he called her to his office.

20. Admissions employee, Ms. Jones witnessed Jane Doe go to Orenn Fells' office every time; Jane Doe remembers seeing her at her desk every time she went to see Orenn Fells. While at the office, Orenn Fells made sexual remarks and requests; Jane Doe declined stating she felt uncomfortable. On one occasion, Orenn Fells attempted to kiss Jane Doe while in his office to which she declined.

21. After this incident, Fells sent text messages to Jane Doe that included sexually explicit pornographic images and stated that he wanted Jane Doe to engage in similar sexual conduct with him.

22. After receiving the sexually explicit text messages, Jane Doe blocked Orenn Fells' personal cellular phone, work phone and Facebook page. Orenn Fells confronted Jane Doe at the library and demanded to know why she blocked him. Jane Doe told Orenn Fells that she felt uncomfortable. He responded that it was because of him that she got into FAMU.

23. Jane Doe feared the repercussions of blocking Orenn Fells. She unblocked him and text messaged him, afraid that he would do something to jeopardize her law school education.

24. After Jane Doe unblocked Orenn Fells, he sent Jane Doe text messages stating, "i know you wanna make things right with me right", and "you don't wanna get me byke [back] on your team?" Both messages insinuated that it was in her best interest to keep him on her good side.

25. Orenn Fells asked Jane Doe for oral sex via text messages. She replied to his text messages by declining, stating that she felt uncomfortable. He reminded Jane Doe via text message that he got her into law school.

26. In or about October of 2017, Fells text messaged Jane Doe while she was on her way to her car and asked her to wait for him at the parking garage. Unwillingly, Jane Doe waited. When he arrived, she nervously spoke to him, afraid of what he might do.

27. Orenn Fells had Jane Doe to get in the back seat of his car. There, Orenn Fells grabbed Jane Doe's arm, slid her close to him, and pulled his penis out of his pants. He then asked Jane Doe to perform oral sex on him. Jane Doe declined, stating she felt uncomfortable. In a chastising tone, he said, "Be a grown woman" and told her to stop being so scared. She slid to the opposite side of the car and he pulled her close to him again.

28. Jane Doe did not consent to engaging in oral sex with Orenn Fells. Orenn Fells grabbed her head and pushed it toward his penis, forcing her head down. Jane Doe continued to say no and tried to pull her head up and he pushed it further down. He pushed her head down toward his penis and continued to push her head down while holding the back of her neck, guiding Jane Doe's head back and forth. When she tried to pull her head away from Orenn Fells' penis he held it down and ejaculated in her mouth.

29. After they left the parking garage, he texted Jane Doe about other sexual acts he wanted her to do with him. Jane Doe text messaged Orenn Fells that she did not want to engage in any other sexual acts with him. Orenn Fells later approached Jane Doe outside of the FAMU library about giving into his demands and sarcastically said, "Well I am just glad I got you into law school." Jane Doe declined; she decided she would not continue to engage in this conduct regardless of the consequences.

30. Jane Doe blocked Orenn Fells' personal and work contact numbers. Jane Doe reported Orenn Fells' conduct to Gary Harrington, Director of Student Affairs at FAMU College of

Law on December 4, 2017. Jane Doe sought counseling with FAMU due to experiencing feelings of anxiety and depression as a result of Orenn Fells' sexual harassment.

31. Prior to Jane Doe mentioning Orenn Fells' name as the alleged perpetrator, Gary Harrington knew that Orenn Fells was the subject of Jane Doe's complaint. He confirmed to Jane Doe the identity of the alleged perpetrator before she disclosed his name.

32. On December 5, 2017, Orenn Fells was placed on administrative leave with pay pending an investigation. FAMU did not enforce a no contact order after Jane Doe's disclosure of sexual harassment and assault by Orenn Fells.

33. Carrie Gavin was assigned as the Title IX investigator. Jane Doe was cooperative and disclosed Orenn Fells' sexual harassment and inappropriate conduct to Carrie Gavin, as well as evidence available that would corroborate her allegations; however, Jane Doe was fearful and expressed concerns about the investigative process.

34. Jane Doe informed Carrie Gavin that she was under a lot of stress and anxiety, which affected her performance in school. She stated that she could not concentrate and that she was having trouble with her classes; she was unable to read and focus in her classes and felt overwhelmed with the entire investigative process. Carrie Gavin did not offer Jane Doe individualized services to assist Jane Doe during the Title IX investigation.

35. Jane Doe was under the impression that she had to cooperate with the Orlando Police Department in order to participate in the Title IX investigation. She informed Carrie Gavin that she was afraid to involve the police because she feared for her safety; she was afraid that Orenn Fells would retaliate. Jane Doe also expressed that she was hesitant to participate in the Title IX investigation because she was afraid this would affect her performance while taking her final exams, causing a high level of stress and anxiety.

36. Carrie Gavin did not inform Jane Doe that the Orlando Police Department's involvement was not necessary for FAMU's Title IX investigation. Further, she did not inform Jane Doe of the investigative process, safety measures, and extensions of time or other course related adjustments available to her.

37. Carrie Gavin's written record failed to adequately document the incidents reported by Jane Doe and completely misstated Jane Doe's allegations against Orenn Fells. Furthermore, she failed to follow up on evidence available, such as text messages from Orenn Fells corroborating the sexual harassment, cellular phone records, and witness statements. After a superficial, perfunctory, incomplete, and inaccurate investigation, apparently intended from the outset to clear Orenn Fells, Carrie Gavin concluded that Jane Doe's allegations were unsubstantiated on February 12, 2018.

38. After reporting Orenn Fells' sexual harassment, Jane Doe made three separate requests to Gary Harrington to change her locker. It was located on the bottom row and she felt uncomfortable accessing her books and belongings because it required her to bend over, producing anxiety and feelings of excessive self-consciousness. Jane Doe specifically communicated to Gary Harrington that she felt paranoid and was extremely uncomfortable squatting or bending down while wearing certain professional attire, such as skirts and heels. Jane Doe noted that there were empty available lockers not on the bottom row. Gary Harrington did not honor Jane Doe's reasonable request.

39. When attempting to convince Jane Doe to go to an event where student's attendance was encouraged, Gary Harrington desperately stated to Jane Doe that if she went to this event he would concede to her request and change her locker. Jane Doe was in shock with Gary

Harrington's quid pro quo statement. Nevertheless, Jane Doe declined to go to the event; her request was never granted, contributing to her emotional distress.

40. Jane Doe did not receive the counseling she sought after disclosing the sexual harassment to Gary Harrington. Instead, the FAMU counselor, Anika Fields, communicated to Jane Doe via text messages, emails and telephone and did not offer an in-person appointment. Jane Doe felt that her communications with Anika Fields were unproductive, causing her to desist communications.

41. As a result of FAMU's failure to provide Jane Doe with in-person counseling services, Jane Doe continued to experience emotional distress, poor concentration, insomnia, and anxiety prompting her to seek therapy once again at an off-campus facility in April of 2018.

42. Jane Doe's grades suffered in her first semester and she was placed on academic probation as a result of Orenn Fells' sexual harassment. Consequently, she was unable to receive credit for her internship, nor take additional summer courses to improve her grade point average. Gary Harrington informed Jane Doe that Dean Nicky A. Booth-Perry could authorize certain academic accommodations upon request.

43. Jane Doe proceeded to make a request to Dean Nicky Booth-Perry in May of 2018. She requested an exception to allow her to take summer classes or get credit for a summer internship in light of the stress and anxiety she was suffering as a result of Orenn Fells' sexual harassment and assault. Dean Nicky Booth-Perry declined Jane Doe's request without offering further options, accommodations or adjustments.

44. On May 18, 2018, Orenn Fells was reinstated to his position at FAMU. Jane Doe was not informed of Orenn Fells' return to FAMU or the results of the Title IX investigation by

Carrie Gavin. Soon after Orenn Fells' reinstatement, Jane Doe and Orenn Fells had an encounter on campus, causing Jane Doe extreme emotional distress, anxiety and fear.

45. During conversations with schoolmates on social media after Jane Doe's encounter with Orenn Fells, Jane Doe learned that she was not the only student to complain of Orenn Fells' misconduct. There were other complaints made to FAMU officials of Orenn Fells engaging in inappropriate behavior toward female law school students, such as inappropriately contacting them on social media. There were accusations that FAMU admissions employees would require girls to "suck them off" for admission to FAMU.

46. Although Carrie Gavin completed the Title IX investigation on February 12, 2018 and Orenn Fells was reinstated to his position on May 18, 2018, Jane Doe was not made aware of the results of the Title IX investigation until July 6, 2018. After receiving the Title IX investigative memorandum from Carrie Gavin via email, Jane Doe pointed out to Carrie Gavin several errors and inconsistencies in the memorandum. Further, she reiterated that there was evidence and possible witness statements available to substantiate the allegations against Orenn Fells. Carrie Gavin never responded to Jane Doe.

47. In May of 2018, Carrie Gavin was informed by a professor at the FAMU College of Law via email that there were other complaints of sexual harassment by Orenn Fells from other female students at FAMU, and included evidence substantiating such allegations. Further, she was informed about Jane Doe's case and the effect it had on Jane Doe as witnessed by said professor. Carrie Gavin did not engage in further inquiry or investigation in light of the information provided by Jane Doe and the FAMU professor.

48. Upon information and belief Dean Reginald Green and other FAMU faculty members had prior notice of Orenn Fells' sexual harassment of female law school students prior to Jane Doe's sexual harassment by Orenn Fells.

49. Upon information and belief, FAMU has a pattern of failing to properly conduct Title IX investigations into allegations of sexual misconduct and rigging Title IX investigations for the purpose of rehiring or reinstating faculty members accused of sexual misconduct, substantially increasing Jane Doe's chances of being sexually harassed and assaulted.

50. Pursuant to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, institutions are required to collect and disclose statistics of crimes reported to campus security authorities and local police agencies that involve sexual assault incidents. The purpose of the act is to improve crime reporting which will in turn, promote safety and security on campus. Statistics disclosed by FAMU in 2017 show that there were no reported incidents of sexual offenses in FAMU College of Law.

51. FAMU failed to accurately disclose Jane Doe's reported incident of sexual assault by Orenn Fells. Further, upon information and belief, FAMU failed to disclose other reports of sexual assault by students attending FAMU College of law in 2017 and previous years. FAMU's customs and policies create a discriminatory environment for female students that fostered sexual harassment and assault.

**COUNT I - VIOLATION OF TITLE IX, EDUCATION AMENDMENTS OF 1972 - 20**
**U.S.C. §1681 ET SEQ.  AGAINST FAMU- ACTUAL NOTICE OF SEXUAL**
**HARASSMENT PRIOR TO AND/ OR DURNG ORENN FELLS' SEXUAL**
**HARASSMENT OF JANE DOE**

52. Plaintiff Jane Doe readopts and realleges all of the allegations set forth in Paragraphs 1 through 51 as though fully set forth herein.

53. At all relevant times, Defendant FAMU received federal financial assistance.

54. Plaintiff Jane Doe had a right to not be subject to sexual discrimination, harassment or assault while attending FAMU College of Law.

55. FAMU's pattern of failing to properly conduct Title IX investigations into allegations of sexual misconduct and rehiring or reinstating faculty members accused of sexual misconduct evinces a discriminatory policy or custom that is in direct violation of Title IX, thus not requiring a showing of actual notice of a risk of sexual harassment, and deliberate indifference by FAMU.

56. FAMU's policy or custom of discrimination created a heightened risk of sexual assault, resulting in Jane Doe's sexual harassment and sexual assault by Orenn Fells.

57. In the alternative, upon information and belief, FAMU through its agents and representatives, had actual notice that Orenn Fells was sexually harassing and/ or assaulting female students.  This included FAMU College of Law's Dean, Reginald Green, and Director of Student Affairs, Gary Harrington, being informed by students of Orenn Fells' common practice of inappropriate communications with female law school students and past inappropriate sexual misconduct. This placed FAMU on actual notice of the risk of sexual harassment and assault by Orenn Fells' upon Jane Doe and other students.

58. Dean Reginald Green and Gary Harrington had the responsibility to conduct a prompt, reliable, thorough, and impartial investigation into the allegations of sexual harassment and sexual assault of female students by Orenn Fells, which they failed to do upon receiving prior complaints against Orenn Fells. Instead, Dean Reginald Green, and other FAMU officials ignored a pattern of sexual harassment by Orenn Fells.

59. Dean Reginald Green and Gary Harrington, having actual notice, had authority to address the acts of sexual harassment and sexual assault of female students by Orenn Fells and institute corrective measures. Instead, no disciplinary action or corrective measures were instituted by FAMU. FAMU was deliberately indifferent upon receiving actual notice of Orenn Fells' sexual harassment of female law school students.

60. In response to actual notice provided on different occasions that Orenn Fells sexually harassed female students, Dean Reginald Green and Gary Harrington could have instituted any of a number of corrective measures that would have prevented any sexual harassment or sexual assault of students on campus grounds by Orenn Fells including without limitation, (i) conducting an adequate investigation into all allegations of sexual harassment against Orenn Fells (ii) termination of Orenn Fells; (iii) long-term suspension of Orenn Fells; (iv) reassigning Orenn Fells to another position where he would have no direct contact with students; (v) reassigning Orenn Fells to another position where he would have no authority over students; (vi) assigning staff to monitor Orenn Fells' activities on campus grounds; (vii) written reprimand in his employment record, advising him among other things, of no tolerance for any further incident of sexual harassment; and/or (viii) implementing any such other measures reasonably intended or designed to protect female students at FAMU, including Jane Doe, from sexual harassment or sexual assault.  Despite

receipt of actual notice, Dean Reginald Green, Gary Harrington, FAMU and their agents and representatives, acted with deliberate indifference in failing to institute any of the above-mentioned reasonable corrective measures.

61. As a result of FAMU's deliberate indifference, Jane Doe was sexually harassed and sexually assaulted by Orenn Fells on campus grounds. The sexual harassment and assault of Jane Doe on campus grounds created an intolerably hostile and damaging environment for Jane Doe, and effectively barred her from access to educational opportunity or benefit from the School.

62. As a direct and proximate result of FAMU's deliberate indifference upon receipt of actual notice of sexual harassment by Orenn Fells' prior to Jane Doe's sexual harassment and assault by Orenn Fells, Plaintiff Jane Doe has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and regression, costs associated with medical/psychological care and treatment. Alternatively, Plaintiff sustained an aggravation of an existing disease or mental or physical defect or activation of a latent condition and the same losses associated with such. The injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court enter judgment against FAMU, and award all damages including compensatory damages and special damages, costs, interest, attorneys' fees pursuant to 42 U.S.C. §1988, and any other relief that this Court deems just and proper.

## COUNT II - VIOLATION OF TITLE IX, EDUCATION AMENDMENTS OF 1972 - 20 U.S.C. §1681 ET SEQ.  AGAINST FAMU- FAILURE TO INVESTIGATE AND PROVIDE ACCOMMODATIONS IN RESPONSE TO ACTUAL NOTICE OF SEXUAL HARASSMENT OF JANE DOE

63. Plaintiff Jane Doe readopts and realleges all of the allegations set forth in Paragraphs 1 through 51 as though fully set forth herein.

64. After Jane Doe's report of sexual harassment and assault by Orenn Fells, FAMU failed to conduct an equitable investigation under Title IX. Title IX investigator, Carrie Gavin, failed to gather evidence necessary to reach a fair and impartial determination as to whether Orenn Fells engaged in sexual misconduct. Further, Carrie Gavin failed to speak to potential witnesses and acquire available evidence that would have substantiated Jane Doe's allegations, such as text messages and cellular phone records. Such omissions were intentional and for the purpose of finding that Jane Doe's allegations were unsubstantiated, allowing Orenn Fells reinstatement to his position at FAMU.

65. FAMU failed to notify Jane Doe of the results of the Title IX investigation concurrently with Orenn Fells, causing unnecessary emotional distress.

66. FAMU failed to make reasonable accommodations and adjustments for Jane Doe as an alleged victim of sexual harassment and assault by its staff member, including but not limited to, instituting a no contact order.

67. In response to Jane Doe's disclosure of Orenn Fells' sexual harassment and assault, FAMU could have instituted any of a number of corrective measures that would have eliminated deprivation of Jane Doe's access to educational opportunities including without limitation, (i) campus escort services for Jane Doe (ii) extensions of time or other course related

adjustments; (iii) modifications of class schedules; (iv) increased security and monitoring of certain areas of campus; (v) advising Jane Doe of the Title IX investigatory process; (vi) advising Jane Doe of on and off campus resources available to victims of sexual assault; (vii) providing Jane Doe with counseling services; and/or (viii) implementing any such other measures reasonably intended or designed to protect female Jane Doe, from sexual harassment or sexual assault, further emotional distress and deprivation of her educational rights.

68. FAMU's unreasonable response to Jane Doe's allegations created an intolerably hostile and damaging environment for Jane Doe, and effectively barred her from access to educational opportunity or benefit from the School.

69. As a direct and proximate result of FAMU's failure to make reasonable and necessary accommodations and adjustments for Jane Doe as an alleged victim of sexual harassment and assault by its employee, Orenn Fells, Plaintiff Jane Doe has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and regression, costs associated with medical/psychological care and treatment. Alternatively, Plaintiff sustained an aggravation of an existing disease or mental or physical defect or activation of a latent condition and the same losses associated with such. The injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court enter judgment against FAMU, and award all damages including compensatory damages and special damages,

costs, interest, attorneys' fees pursuant to 42 U.S.C. §1988, and any other relief that this Court deems just and proper.

### COUNT III – NEGLIGENCE AGAINST FAMU

70. The Plaintiff Jane Doe readopts and realleges all of the allegations set forth in Paragraphs 1 through 51 as though fully set forth herein.

71. All conditions precedent to the bringing of this cause of action have been satisfied or waived, including the notice required by Florida Statute §768.28.

72. Defendant FAMU was in a special relationship with Jane Doe of school-student, such that it owed a duty to protect Jane Doe from foreseeable harm on campus ground and during educational-related activities.  At all material times, FAMU owed a duty to use reasonable care to protect the safety, care, well-being and health of Jane Doe while on FAMU property.  These duties encompass providing a safe environment for Jane Doe while on FAMU premises.

73. FAMU was in a special relationship with Orenn Fells of employer and employee/agent such that it had a duty to take steps to make sure that Orenn Fells was safe when giving him access to students.

74. FAMU had a duty in hiring, retaining and supervising Orenn Fells to prevent foreseeable harm to students and prevent employee sexual misconduct.

75. FAMU had a duty to adequately train staff in investigating and protecting students from employee sexual misconduct.

76. Prior to Jane Doe's sexual harassment and assault, FAMU in the exercise of reasonable care, should have known that Orenn Fells was dangerous and a threat to the health, safety and welfare of students, including Jane Doe.

17

77. Prior to the sexual incidents, FAMU by and through its agents, servants, and employees, knew or should have known of Orenn Fells' dangerous sexual propensities and that he was unfit to serve in any position within FAMU involving contact with students.

78. In light of FAMU's actual knowledge of Orenn Fells' previous sexual harassment and assault of students, sexual harassment and assault of Jane Doe was reasonably foreseeable to FAMU.

79. With such knowledge, FAMU retained Orenn Fells, and failed to adequately supervise his acts and conduct with students, needlessly endangering Jane Doe's health and safety by allowing Orenn Fells unfettered, unsupervised access to Jane Doe on multiple occasions.

80. Despite FAMU's knowledge of prior complaints of inappropriate conduct by Orenn Fells', as described above, FAMU breached its duty to protect Jane Doe by allowing Orenn Fells to serve in the admissions department, giving him access to students despite such knowledge of his dangerous sexual propensities, and by failing to institute any supervision of Orenn Fells' contact with students.

81. At all relevant times, FAMU had inadequate policies and procedures to protect students from foreseeable harm, including Jane Doe. FAMU's policies created a discriminatory environment for female students that fostered sexual harassment and sexual assault.

82. FAMU breached its duties by failing to take corrective measures or adequately investigate reports or allegations of sexual misconduct by Orenn Fells prior to and after Jane Doe's sexual harassment and assault.

83. FAMU breached its duties by failing to notify Jane Doe of Orenn Fells' reinstatement, causing her emotional distress during their encounter on FAMU property. Jane Doe has been subject to repeated on-campus encounters with Orenn Fells.

84. As a direct and proximate result of FAMU's breach of its duties Jane Doe was sexually harassed and sexually assaulted by Orenn Fells while attending FAMU.

85. As a result of the sexual harassment and assault, Plaintiff Jane Doe has suffered severe psychological, emotional and physical injuries, and emotional distress arising out of the physical injuries, pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, inability to lead a normal life, shame, humiliation and regression, costs associated with medical/psychological care and treatment. Alternatively, Plaintiff sustained an aggravation of an existing disease or mental or physical defect or activation of a latent condition and the same losses associated with such. The injuries and damages are permanent and continuing in nature and the Plaintiff will suffer such losses in the future.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court enter judgment against FAMU and award all damages including compensatory damages and special damages, costs, interest, and any other relief that this Court deems just and proper.

## COUNT IV- PETITION FOR INJUNCTIVE RELIEF

86. The Plaintiff Jane Doe readopts and realleges all of the allegations set forth in Paragraphs 1 through 51 as though fully set forth herein.

87. This is an action for injunctive relief against FAMU, requiring FAMU to offer Jane Doe reasonable adjustments and accommodations as a victim of sexual harassment and assault by FAMU employee, Orenn Fells. Such adjustments and accommodations include, but shall not be limited to, a no contact order, relocating her locker, providing her options to increase her first-year grade point average, and in-person therapy on campus, among other reasonable corrective measures.

88. Irreparable harm will result if injunctive relief is not entered as there is no adequate remedy at law available. Jane Doe's law school career is a crucial and pivotal point that will influence the trajectory of her legal career. Jane Doe has only one opportunity to pursue her law school degree and position herself to succeed as a recipient of a Juris Doctor degree and future lawyer.

89. If injunctive relief would to ameliorate the damage caused by FAMU's inaction and its employee's sexual misconduct, Jane Doe will never have an opportunity to modify her law school performance. Jane Doe's resume will forever reflect a subpar performance as a result of the stress caused by Orenn Fells' sexual harassment and assault and FAMU's failure to accommodate Jane Doe as a victim of sexual harassment and assault. Consequently, affecting future employment opportunities.

90. The negative impact of FAMU's failure to reasonably accommodate Jane Doe as a victim of sexual harassment and assault cannot be cured by money damages.

91. There is a substantial likelihood of success on the merits as the threatened injury to Jane Doe outweighs the possible harm to FAMU. There is no possible harm to FAMU to accommodate Jane Doe reasonably as it is FAMU's duty under federal law to provide interim and corrective measures after disclosure of sexual harassment and assault by a student. FAMU should have the necessary resources in place to provide individualized services to victims of sexual harassment and assault.

92. Injunctive relief will serve the public interest as under Title IX, FAMU as a recipient of federal funds, is required to accommodate alleged victims of sexual abuse and provide corrective measures so that no student suffers a deprivation of her or his access to

educational opportunities on the basis of sex, pursuant to guidance provided by the United

States Department of Education, Office for Civil Rights.

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court enter judgment against

FAMU and grant injunctive relief, and any other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby requests a trial by jury on all issues contained in this Complaint.


August 12, 2019                              Respectfully submitted,



                                             HERMAN LAW
                                             5200 Town Center Circle #540
                                             Boca Raton, FL 33486
                                             Tel:  305-931-2200
                                             Fax:  305-931-0877

                                             By:    /s/ Krisel McSweeney
                                                    Jeffrey M. Herman
                                                    Florida Bar No. 521647
                                                    jherman@hermanlaw.com
                                                    Krisel McSweeney
                                                    Florida Bar No. 112637
                                                    kmcsweeney@hermanlaw.com